## IRA G. BALCOM v. A. S. PEACOCK.

### No. 10874.

1. COUNTY CONTEST COURT—*only a temporary tribunal.* The courts for the trial of contested county elections have no fixed tenure or permanent character, but are only called into existence when a contest is instituted.

2. ——— *more than one may exist at the same time.* A court is organized for each contest instituted, and therefore more than one court may be in existence at the same time.

3. ——— *once organized, not destroyed nor proceedings nullified by probate judge's wilful withdrawal.* The probate judge is the presiding officer of the court, when not disqualified to act, but after he organizes a court and the trial is begun he cannot destroy the organization or nullify the proceedings already had by wilfully withdrawing from the court or refusing to sit with his associates.

4. ——— *change of incumbent of probate judge's office before hearing on merits begun, does not dissolve, nor require rehearing of decided preliminary motions.* After the probate judge had organized a contest court and some preliminary motions in the contest had been heard and determined, but the trial of the merits had not yet been commenced, the term of the probate judge expired. *Held*, that the expiration of the term did not work a dissolution of the court, nor make it necessary to re-hear and determine the preliminary motions already decided; and that it was the duty of his successor to unite with the two associate judges in hearing and determining the merits of the controversy.

5. ——— *bond running to State instead of contestee, not invalid.* A bond for the payment of costs filed at the commencement of the contest which is approved by the probate judge is not deemed invalid because it runs to the State of Kansas, instead of to the contestee.

Error from Trego District Court. Lee Monroe, Judge. Opinion filed February 5, 1898. *Affirmed.*

*David Rathbone*, for plaintiff in error.

*H. J. Harwi*, for defendant in error.

JOHNSTON, J. This was an action of quo warranto to try the title to the office of county superintendent

of public instruction of Trego county. At the general election held in that county in November, 1896, A. S. Peacock and Ira G. Balcom were opposing candidates for the office named, and upon the face of the returns Balcom had the greater number of votes. After the votes had been canvassed and the result declared Peacock instituted a contest, alleging that votes of persons who were not electors of the county were illegally received and counted for his opponent, and also that illegal ballots were wrongfully and illegally counted for Balcom. After the filing of the verified statement for contest, and the giving of a bond, S. R. Cowick, probate judge of the county, selected W. J. Skelton and Theodore Courtney to act as associate judges of the contest, and fixed on January 5, 1897, as the time of trial. Another contest was begun in the county to determine whether John F. Barclay or Joshua Musgrave was elected as county commissioner, and Probate Judge Cowick designated other associate judges to sit with him in the trial of that contest, and fixed January 2, 1897, as the time for the trial of the same. The contest court for the trial of the later-named contest was organized on January 2, 1897, and the trial was in progress at the time fixed for the contest between the parties to this proceeding. On January 5, the day named for the trial of the Peacock-Balcom contest, the court was organized, but it adjourned from day to day until the Barclay v. Musgrave contest was completed. When either court was in session Judge Cowick presided and continued to act as probate judge until January 11, 1897, when his term of office expired, and when he was succeeded by R. M. Tunnell. On that day the court for the trial of the Peacock-Balcom contest was in session, and some time during the day Tunnell appeared and announced that he had

qualified as probate judge and was ready to sit as presiding judge of the court. He testifies that no reply was made to his proposition, that the associate judges ignored him, and that one of them afterward told him privately that they would not sit with him. The associate judges, however, denied that they ever declined to sit with him in the contest, and they state that at the time of his proposition they did not know whether Cowick or Tunnell was actually the probate judge of the county, and therefore they at once adjourned the court until January 13, and that they then invited Tunnell to take his place in the court as the presiding judge. At that time Cowick, recognizing that he was no longer probate judge, withdrew from the court, but Tunnell, although invited and requested to sit with the associate judges, refused to do so, and the trial then proceeded in the absence of the probate judge. Only preliminary motions had been heard and decided before Cowick retired from the court, and the trial upon the merits was not begun until after Tunnell became probate judge and had an opportunity to sit as a member of the court. The trial before the two associate judges resulted in a judgment that Peacock had received a majority of the legal votes cast in the county and was duly elected to the office of county superintendent of public instruction and entitled to his certificate upon qualification. It was further adjudged that the certificate of election which had been issued to Balcom should be annulled and set aside. Balcom having refused to surrender the office the present proceeding was brought in the district court, where judgment was given in favor of Peacock.

As the judgment rests mainly upon the findings and determination of the contest court, the validity of its organization and proceedings becomes important. The contest court is first attacked upon the ground

that another court had been organized three days before and was in existence when the one in question was organized. It is. argued that there can be but one contest court, and that the one organized for the trial of the Barclay-Musgrave case was the court for the trial of all contests during its existence, and that therefore the one organized for the Peacock-Balcom case was illegal. We cannot agree with this contention. The court to be organized for the trial of contested elections is not of a permanent character. There is no fixed tenure or term nor is it created to try all contests that may arise during the term of the probate judge, nor during any other definite period of time. It is only called into existence when a contest is instituted by the filing of the verified statement and bond at the times and in the manner provided by statute. Gen. Stat. 1897, ch. 53, § 15.

When the prescribed steps are taken and a contest is begun, a court for the trial of the same is created. It is organized by the probate judge, who selects two associate judges to sit with him in the trial except when he is interested, and then the county attorney acts in his stead. Only those who are disinterested may be members of the court, and as there might be a number of contests in a county, and judges disinterested in one case might be interested in another, the Legislature deemed it wise to provide for the organization of a court for each contest when it arises. The associates are, therefore, named with reference to and for a single contest, and when the contest is completed and the court has adjourned their authority is ended. The language of the statute providing for the organization of contest courts and proceedings in contests for county offices indicates quite clearly, we think, that an independent court is organized for each

contest. Gen. Stat. 1897, ch. 53, §§ 11–31. It was, therefore, competent for the probate judge to select and nominate associate judges for each of the contests instituted in Trego County, and the fact that one of them had been organized did not prevent the organization of another upon the filing of the statutory statement and bond. The probate judge selected and nominated associate judges for this case, and so far as appears they possessed the statutory qualifications and the proper preliminary steps were taken in the organization.

The claim that they were not duly appointed because the record fails to show that formal entry by the probate judge to that effect was made, is without force. The record shows that they were nominated by the probate judge, that notice of their selection was duly served upon the contestee, and that they subsequently and in good time organized and acted as members of the contest court. As the probate judge presided in each of the cases, the court in the Peacock-Balcom case necessarily waited for the termination of the one first organized for the trial of the Barclay-Musgrave case, and the trial of the former was postponed from time to time until the probate judge was released from the latter court.

After the court had been organized as we have seen and some preliminary motions had been made and decided in the Peacock-Balcom case, Judge Cowick's term of office ended. Tunnell, his successor, did not sit with the associate judges, and it is contended in behalf of Balcom that the proceedings and judgment of the contest court are without force because of the absence of the probate judge. As soon as Judge Tunnell had qualified and had gained possession of his office he was entitled to sit as a member of the contest court. The

*4 Change of probate judge does not destroy court.*

probate judge is a member of the court by virtue of his office, and the change of officers did not work a dissolution of the court nor make it necessary to rehear and determine the preliminary motions which had been previously heard and determined. The trial of the merits of the controversy had not been begun, and it was therefore the duty of Judge Tunnell to unite with the two associates in hearing and determining the merits of the controversy.

There is some dispute in the testimony as to whether Tunnell was given an opportunity to participate in the trial. On one side it is claimed that his application to sit as a member of the court was refused, and, on the other that, instead of a refusal, he was requested to become a member of the court and proceed with the trial to the end, but that he declined to do so. This dispute has been settled by the trial court in favor of the claims of Peacock, and there being sufficient evidence to sustain the same, it must be taken as a fact that Tunnell had both notice and an opportunity to become a member of the court, and that his refusal to avail himself of the opportunity was without justification. The court, however, was not dissolved by his refusal or his absence. The organization of a contest court, once effected, cannot be destroyed and the proceedings nullified by the wilful withdrawal or absence of one member of the court. The court is composed of three members, and although the associates are nominated by the probate judge, yet when they have been appointed and the organization has been effected their powers are equal to those of the probate judge, and the judgment of a majority of the court is effectual and controlling. While there is no specific provision to this effect in the statute relating to contests, we have the general statute which provides that "words giving a joint authority

3. Once court organized not destroyed, when.

to three or more public officers, or other persons, shall be construed as giving such authority to a majority of them unless it be otherwise expressed in the act giving the authority.'' Gen. Stat. 1897, ch. 1, § 8. It was, therefore, competent for the associate judges to proceed with the trial of the contest, and their judgment, which appears to be regular in form, is binding upon the parties.

The jurisdiction of the court is assailed because the bond for costs in the contest runs to the State of Kansas instead of to the contestee. The statute does not declare what shall be the form of the bond nor in whose favor it shall run, but simply provides that a bond shall be given by the contestor with security to be approved by the probate judge conditioned ''to pay all costs in case the election is confirmed, or the statement be dismissed, or the prosecution fails.'' (Gen. Stat. 1897, ch. 53, § 15.) There is no statutory requirement that the bond shall run to the contestee, and as it is for the benefit of the officers who may perform services in the contest and witnesses who may attend the same, no reason is seen why it may not properly run to the State. The bond given was approved by the probate judge, and we think it is available to any one entitled to costs as against the contestor.

The further claim that Peacock had forfeited his office for failure to file an official bond with the county clerk within twenty days after the commencement of his term cannot be sustained. It appears that he executed a sufficient bond, which was approved by the board of county commissioners, or at least by a tribunal assuming to act as such. There appears to have been some controversy in that county as to who were members of the board of county commissioners, but the board which was

5. Bond running to state good.

acting and which approved the bond met in the office of the county clerk, and so far as appears it was legally constituted. They approved the bond of Peacock on January 16, 1896, and it was filed with a person appointed by the board to act as county clerk. Subsequently the bond was recorded in the office of the register of deeds. It is not clear that a mistake by the county superintendent of public instruction in filing his official bond would operate as a forfeiture of his office, but however that may be there is nothing to show that a mistake was made or that he failed to comply with the statute in the giving of a bond.

The judgment of the district court will be affirmed.